## STARK et al., Respondents, v. KIRKLEY et al., Appellants.

### St. Louis Court of Appeals, March 3, 1908.

1. **PRACTICE: Error not Prejudicial.** Error committed by the trial court in permitting the introduction of evidence will not work a reversal unless it is prejudicial to the party assigning the error.

2. **PARTNERSHIP NAMES: Conveyances: Equitable Mortgage.** While a conveyance to a partnership name without giving the names of the partners would not vest title in the persons composing the partnership, yet a contract designed to charge a tract of land with a lien in favor of a partnership, giving only the partnership name, is sufficient to create an equitable mortgage so that the lien could be enforced by a bill in equity.

3. **LIENS: Notice.** Where the owner of a tract of land executed and acknowledged an instrument whereby he agreed to give a lien for the purchase price of fruit trees which he bought and planted upon the land to the seller of the trees, and the instrument was filed for record in the office of recorder of deeds of the county, all subsequent purchasers of the land took with notice of the lien.

Appeal from Butler Circuit Court.—*Hon. Jesse C. Sheppard,* Judge.

129 App—23

AFFIRMED.

*Phillips & Phillips* for appellants.

*Nathaniel C. Whaley* and *David W. Hill* for respondents.

The bill of exceptions was filed in the office of the clerk of the trial court June 11, 1906. The appeal therefore was returnable to the October, 1906, term of this court, but the certified copy of the judgment and order granting appeal was not filed in this court until February 16, 1907, which was not in time, and we therefore insist that the judgment of the trial court be affirmed. R. S. 1899, secs. 812, 813. Rules 14a and 22 of this court. Johnson v. Riggs, 67 Mo. App. 491; Laundry Co. v. Insurance Co., 62 Mo. App. 11; Burdett v. Dale, 95 Mo. App. 509. "Stark Bros., of Louisiana, Pike county, Missouri," as the fruit tree liens designate the grantees, were sufficiently definite and certain to enable us to show, by extrinsic evidence, as we did show in this case, exactly who the grantees were, who took, at least, equitable rights under these liens. Arthur v. Weston, 22 Mo. 278. This doctrine is affirmed in another case cited by appellants. Riffel v. Land & Lumber Co., 81 Mo. App. 180. Appellants, in this court, make the point that the wording of the certificates of acknowledgment to the fruit tree contracts do not strictly follow the statute, while no such objection was urged in trial court, but even if such objection had been urged there, the fruit tree liens were admissible in evidence because they had been recorded more than ten years before offering them in evidence. R. S. 1899, sec. 3123; Hoge v. Hubb, 94 Mo. 497; Wells v. Pressy, 105 Mo. 181.

STATEMENT.—In 1893 and 1894, Alfred Kirkley was the owner of the following described real estate, situated in Butler county, Missouri: the southeast quarter, of the southwest quarter, section 5, township

23, range 5 east. On June 30, 1893, plaintiff and Kirkley entered into the following contract:

"This indenture, made and entered into on this thirtieth day of June, A. D. 1893, by and between Alfred Kirkley, Harviell (P. O. four miles W. direction), of the county of Butler and State of Missouri, party of the first part, and Stark Bros., of Louisiana, county of Pike and State of Missouri, parties of the second part.

"Witnesseth, that said party of the first part, in consideration of the second parties selling and shipping to him in the fall of '93, or spring of '94, to Harviell, Missouri, railroad freight charges prepaid, seven hundred and seventy-eight (778) fruit trees, binds himself, his heirs and assigns, to plant said trees on his farm containing forty acres, situated in Butler county, State of Missouri, and more particularly described as follows, to-wit: (Here copy description in your deed in full): Southeast quarter (1/4) of southwest quarter (1/4) of section 5, township 23, range 5; boundaries (name adjoining owners): Marion Cox on west, and to pay to the order of said second parties their heirs or assigns one hundred and sixty-six and 86c ($166.86) dollars, due and payable as follows:

"All payments and interest hereinafter particularly specified to date from the first day of December, 1893, one-fifth in six (6) years, one-fifth in seven (7) years, one-fifth in eight (8) years, one-fifth in nine (9) years, and one-fifth in ten (10) years, with interest at the rate of six (6) per cent per annum, and if the interest be not paid annually, to become as principal and bear the same rate of interest: the right being reserved to the said party of the first part to pay the full amount together with accrued interest at any time he may elect within the period of ten (10) years next after date last above written.

"And it is also understood and agreed by said first

party, by his heirs and assigns, that this shall be a lien upon the above-described premises or real estate, until the full amount, together with interest, shall be paid, and should said first party fail to make the payments when due, together with interest, the above-described real estate, waiving all exemptions, shall be subjected to the payment of the above amount.

"And the said first party, for the purpose of obtaining this credit, states that the above real estate is free and clear of encumbrances and that he claims the same with a perfect title.

"In witness whereof, we have hereunto set our hands and seals this the day and year first above written.          "ALFRED KIRKLEY,          (Seal.)
                              "STARK BROS.               (Seal.)
"Witnessed by E. W. Livingston."

This instrument was duly acknowledged by Kirkley on the day of its date and was filed and recorded in the office of the recorder of deeds of Butler county, on July 12, 1893.    On August 6, 1894, plaintiff and Kirkley entered into a like contract whereby Kirkley agreed to pay plaintiff $162 for 556 fruit trees, said $162 to be "due and payable as follows, all deferred payments and interest hereinafter particularly specified to date from the first day of December, 1894: one-tenth in one (1) year, one-tenth in two (2) years, one-tenth in three (3) years, one-tenth in four (4) years, one-tenth in five (5) years, one-tenth in six (6) years, one-tenth in seven (7) years, one-tenth in eight (8) years, one-tenth in nine (9) years, one-tenth in ten (10) years, with interest at the rate of six (6) per cent per annum, and if interest be not paid annually the same is to become as principal and bear the same rate of interest."    This contract charged a lien on the land as did the one of June 30, 1893, and was also duly acknowledged by Kirkley on the day of its execution and was filed for record and recorded in the office of the recorder of deeds of Butler

county, on August 14, 1894. The fruit trees called for by both contracts were delivered by plaintiffs to Kirkley and were by the latter set out on the land described. On December 23, 1896, Kirkley and wife executed and acknowledged a deed of trust to Samuel W. Foster, trustee, on the aforesaid land to secure the payment of a promissory note for $125, of even date with the deed of trust, signed by Kirkley and wife and payable to John Mangold twelve months after date. This deed of trust was duly recorded. On October 26, 1899, Foster, as trustee, sold the land under the deed of trust to John Mangold and executed and acknowledged his deed as trustee, conveying to said Mangold the aforesaid land. This deed was also duly recorded. On January 8, 1904, Mangold and wife, by their warranty deed, conveyed the land to Thomas Osborn, who executed a deed of trust back to Mangold for the purchase price. Osborn took possession under his conveyance and now occupies the land. Neither Kirkley, or any one for him, paid plaintiffs for the fruit trees. The suit is in equity for a money judgment against Kirkley for the amount due for the fruit trees, and to establish and foreclose an equitable lien upon the land for the payment of said amount. The petition set forth in two counts all the foregoing facts, and prayed for a personal judgment against all the defendants and for a decree "declaring said debt a valid and subsisting lien upon the above described real estate, and that all equities of redemption therein be foreclosed, and that said real estate, or so much thereof as may be necessary, be ordered sold to satisfy said debt, interest and costs." Kirkley made default.

The answer of defendants Mangold and Osborn admitted the execution of the foregoing contracts between Kirkley and plaintiffs, alleged that plaintiffs shipped the trees, but averred that they were entirely worthless, that they never grew and were of no value; that Kirkley in-

formed plaintiffs of the worthlessness of the trees and demanded other trees in their place, but that plaintiffs refused to furnish them. Plaintiffs' evidence tends to show that the trees shipped as per contract were received by Kirkley and planted on the land. Kirkley himself testified that the trees delivered under the first contract were an excellent lot of trees and were in fine condition when received, but the second lot was not quite so good as the first; that he set out all the trees; that he made the contracts in good faith and would have carried them out had he not been sold out under the deed of trust; that at the time he gave the deed of trust he told Mangold about the contracts and that they were a lien upon the land, and that Mangold had an abstract of title showing that both contracts had been recorded. Kirkley testified that he paid plaintiffs $100 on the purchase of the trees. Defendants' evidence tends to show that a portion of the trees delivered under the second contract were inferior and practically worthless; that some of them died the spring they were set out and the orchard was of no value. There is no evidence that Kirkley ever made any complaint to plaintiffs about the quality or condition of the trees, or requested them to furnish other trees in the place of those shipped. The court found that Kirkley was indebted to plaintiffs in the sum of $244.91 on the first count of the petition, and in the sum of $315.94 on the second count; that both the contracts were equitable mortgages on the land described therein and a subsisting lien thereon, and that defendants Mangold and Osborn bought the land with full notice of Kirkley's indebtedness and the lien upon the land for its payment, and decreed a foreclosure of plaintiffs' lien and a sale of the land to satisfy the debt. Defendants Mangold and Osborn appealed from this judgment.

BLAND, P. J. (after stating the facts).—1. R. H. Williams, a witness for plaintiff, testified to the amount due on each of the contracts sued on. Defendants objected to this evidence on the ground that there was no evidence tending to show that they, or either of them, were in anywise indebted to plaintiffs or had any knowledge of Kirkley's indebtedness to plaintiffs. The court said: "I will let that go in subject to objection." It was ruled in Seafield v. Bohne, 169 Mo. 537, that the receiving of evidence "subject to objection," is a bad practice, and will be reversible error if the point is properly preserved by exception. The same ruling was made in Ashbury v. Hicklin, 180 Mo. 658. But an error of any kind, to work a reversal, must be prejudicial to the interest of the party assigning it. Williams' evidence of the amount due on the contracts was a mere matter of calculation which the judge could have made for himself, or have had the clerk make for him, and hence did not prejudice the defendants.

2. The second point in defendants' brief is, that when mortgaged property has passed to a third party, the latter is entitled to a set-off, recoup or counterclaim as against foreclosure and may plead want or failure of consideration. Defendants pleaded a failure of consideration and introduced evidence tending to show a partial failure, but the court, on substantial evidence, found against their contention.

3. The point is made that there is nothing in the two contracts to indicate who are members of the firm of Stark Bros., and hence there is no grantee named and the legal title did not pass. In Arthur v. Weston, 22 Mo. 379, the question was whether a deed from Azariah Holcomb to W. W. Phelps & Co., would take effect as a legal conveyance of land to Phelps, Cowdrey and Whitmore, the persons composing the partnership, upon proof of that fact. It was ruled that it could not.

In Riffel v. Land & Lumber Co., 81 Mo. App. 178, it is said: "If none of the individual names of the copartnership appear in the deed, . . . it must fail to carry the legal title to the land," etc. Plaintiffs do not claim they acquired the legal title to the land, but only claim that they acquired an equitable lien and that on proof (which they made) of the members composing the partnership, they were entitled to have their equitable mortgage foreclosed. In Arthur v. Weston, supra, the court, at p. 378, said: "We must not, however, be misunderstood; our present decision refers to the transfer of the legal estate only, and does not touch the equitable rights of the parties growing out of the transaction." Jones says, "the attempt to create a security in legal form upon specific property having failed, effect is given to the intention of the parties, and the lien enforced as an equitable mortgage. . . . As stated by Judge STORY, 'If a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage.' Effect has been given in this way to a deed of trust in which the name of the trustee was accidentally omitted; to one from which a seal was omitted by mistake," etc. [1 Jones on Mortgages, sec. 168.]

In Sprague v. Cochran, 144 N. Y. l. c. 112, the court said: "There can be no doubt upon the authorities that where one party advances money to another upon the faith of a verbal agreement by the latter to secure its payment by a mortgage upon certain lands, but which is never executed, to which, if executed, is so defective or informal as to fail in effectuating the purpose of its execution, equity will impress upon the land intended to be mortgaged a lien in favor of the creditor who advanced the money for the security and satisfaction of his debt."

That Kirkley intended to give plaintiffs a mortgage on his land as security for the purchase price of the

trees, does not admit of doubt.  The fact that it failed
in legal effect on account of the obscurity in the name
of the mortgagee cannot defeat the equitable quality of
the lien on proof of who was intended to be benefited
by the mortgage.

4.  It is contended that the contracts in the form
of a mortgage were not properly acknowledged and al-
though recorded did not import notice to defendants.
The acknowledgment to the second contract is in statu-
tory form.  The acknowledgment to the first one is as
follows:

"State of Missouri, County of Butler, ss.

"On this the thirtieth day of June, 1893, personally
appeared before me Alfred Kirkley known to me to be
the person whose name is assigned to the above contract
and acknowledged it to be his act and deed.

"In testimony whereof, I have hereunto set my hand
and affixed my official seal at my office in Beaver Dam
Township the day and year first above written.

"(T. S. C. ASHER, J. P. Seal) Notary
Public.   (Seal.)

"My term expires 1894."

The word "assign" instead of the word "sign" is
used to state that Kirkley signed the instrument.  This
was evidently a mere slip of the pen in the hands of
the officer who took the acknowledgment and ought not
be held as debarring the instrument from record.  But
aside from this, this objection is made here for the first
time.  No such objection was made to the form of ac-
knowledgment on the trial, and the answer does not
allege that defendants are purchasers in good faith, with-
out notice, and for a valuable consideration, nor did
either of the defendants testify that he was a purchaser
without notice of plaintiffs' equities.  But as plaintiffs
alleged that defendants bought with actual notice, it
is contended that it devolved upon them to prove that

allegation. After alleging the execution and acknowledgment of the contracts, and where and when they were recorded, and the interest plaintiffs acquired thereby, the petition alleged that defendants accepted their deed with full knowledge of the plaintiffs' debt and the lien upon the above described real estate. The recording of the instruments imported notice to all persons of their contents, and defendants being subsequent purchasers are deemed in law and in equity to have purchased with notice (R. S. 1899, sec. 924; Digman v. McCollum, 47 Mo. 372; Geer v. Lumber & Mining Co., 134 Mo. 85, 34 S. W. 1099), and plaintiffs made out their case when they showed the contracts sued on had been signed and acknowledged by Kirkley and recorded prior to the acquisition by defendants of any interest in the land. Defendants introduced no evidence sufficient in our minds or to the mind of the chancellor to overthrow this prima-facie case.

Discovering no reversible error in the record, the judgment is affirmed. All concur.